James L. Davidson (*pro hac vice*)
Greenwald Davidson Radbil PLLC
5550 Glades Road, Suite 500
Boca Raton, FL 33431
Tel. (561) 826-5477
jdavidson@gdrlawfirm.com

*Counsel for Plaintiff and the proposed class and subclass with others listed below*

**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Monica Abboud, individually and on behalf of a class of persons and entities similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>Circle K Stores Inc.,<br><br>Defendant. | Case No. 2:23-cv-01683-DWL<br><br>**THIRD AMENDED CLASS ACTION COMPLAINT** |

**Preliminary Statement**

1.  Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6),

1  and an attempt to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3. Monica Abboud ("Plaintiff") brings this action under the TCPA, for contacting Plaintiff and other individuals, who, like Plaintiff, were listed on the National Do Not Call Registry.

4. A class action is the best means of obtaining redress for defendant Circle K Stores Inc.'s ("Circle K") wide-scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

5. Plaintiff is an individual.

6. Circle K is a corporation with its headquarters in Tempe, Arizona.

7. Circle K operates convenience stores that sell a wide variety of products, with locations throughout the world.

**Jurisdiction & Venue**

8. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

9. Venue is proper under 28 U.S.C. § 1391(b)(2) because the text messages that were initiated to Plaintiff and the putative class and subclass that are the subject of the litigation were organized and directed to be sent from this District. As such, a substantial part of the events giving rise to the claims occurred in this District. Furthermore, Circle K resides in this District.

**TCPA Background**

10. The TCPA was passed in 1991 to help prevent unwanted telephone calls and solicitations, provide power to consumers to prevent unwanted solicitations, and rein in unrestricted telemarketing. *See* 47 U.S.C. § 227, *et seq.*

11. Relevant here, the TCPA provides private rights of action for three types of telemarketing-related conduct.

12. Section 227(c) of the TCPA requires the Federal Communications Commission ("FCC") to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

13. In this rulemaking proceeding, the FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific 'do not call systems …)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

1  14. Pursuant to this statutory mandate, the FCC established a national "do
2  not call" database. *In the Matter of Rules and Regulations Implementing the Telephone*
3  *Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ("DNC Order").

4  15. This regulation is presently codified at 47 CFR 64.1200(c)(1-2).

5  16. Specifically, a company may not initiate any "telephone solicitation" to
6  a telephone subscriber "who has registered his or her telephone number on the national
7  do-not-call registry of persons who do not wish to receive telephone solicitations that
8  is maintained by the Federal Government." 47 CFR 64.1200(c)(2).

## Factual Allegations

17. Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

18. Plaintiff's telephone number, (XXX) XXX-3670, is a residential telephone number.

19. Plaintiff is, and at all relevant times was, the sole and customary user of telephone number (XXX) XXX-3670, and has been since approximately 2017.

20. Plaintiff registered her telephone number, (XXX) XXX-3670, on the National Do Not Call Registry in February of 2020 to avoid unwanted telemarketing calls and text messages.

21. Plaintiff nonetheless received on telephone number (XXX) XXX-3670 at least three telemarketing text messages from Circle K: two on August 2, 2023, and one on September 11, 2023.

22. The text messages are below:





23. Plaintiff did not have a relationship with Circle K.

24. Plaintiff did not have a relationship with Mobivity Holdings Corp. ("Mobivity"), the SMS provider utilized by Circle K to send text messages.

25. Plaintiff did not provide her telephone number to Circle K.

26. Plaintiff did not provide her telephone number to Mobivity.

5

27. Plaintiff did not consent to receive advertisements or text messages from Circle K.

28. Plaintiff did not consent to receive advertisements or text messages from Mobivity.

29. Nonetheless Circle K sent text messages to Plaintiff to market offers about Circle K's goods and services.

30. Indeed, clicking on the link in the text message took the recipient to an age verification opt-in form, available on Circle K's website, https://www.circlek.com/.

31. Circle K's website contains a Text Messaging Program Terms and Conditions page that states that Circle K sends "MARKETING TEXT MESSAGES VIA AUTOMATED TECHNOLOGY."[1]

32. Moreover Circle K sent text messages to Plaintiff for the express purpose of encouraging the purchase of Circle K's property, goods, or services.

33. Indeed, the text messages advise Plaintiff to reply "YES" to sign up to "receive special offers" and to "get offers" from Circle K.

34. Upon information and belief, Circle K's sole business is the sale of goods at its convenience stores.

### Circle K's Liability for The Text Messages at Issue

35. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

36. In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

---

[1] *See* https://www.circlek.com/terms-conditions (last accessed August 27, 2024).

37. The FCC has instructed that sellers such as Circle K may not avoid liability by outsourcing telemarketing to third parties, such as Mobivity:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (cleaned up).

38. In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

39. Circle K is liable for telemarketing text messages it sent, or directed Mobivity to send, because Circle K provided Mobivity with the telephone numbers to contact and the text messages were sent on behalf of Circle K.

40. Circle K hired Mobivity to send text messages on its behalf.

41. Circle K controls the content of the text messages, the timing of when the text messages are sent, and to which telephone numbers the text messages are sent.

42. The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46.

43. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the

telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

**Class Action Statement**

44. Plaintiff brings this action on behalf of herself and the following class (the "Class") and subclass (the "Subclass") pursuant to Federal Rule of Civil Procedure 23(b)(2) and/or (b)(3).

45. Plaintiff proposes the following class and subclass definitions, subject to amendment as appropriate:

> <u>National Do Not Call Registry Class:</u> All persons throughout the United States (1) to whom Circle K Stores Inc. delivered, or directed to be delivered, more than one text message within a 12-month period, which read, in part, either "Circle K: Reply 'YES' to Sign Up to receive special offers via txt message" or "Circle K: Reply 'YES' to get offers via txt", (2) where the person's residential telephone number had been registered with the National Do Not Call Registry for at least thirty days before Circle K Stores, Inc. delivered or directed to be delivered at least two of the text messages within the 12-month period, (3) from June 6, 2020 through the date of class certification.
>
> <u>National Do Not Call Registry Subclass:</u> All persons throughout the United States (1) who did not provide their telephone number to Circle K Stores Inc., (2) to whom Circle K Stores Inc. delivered, or directed to be delivered, more than one text message within a 12-month period, which read, in part, either "Circle K: Reply 'YES' to Sign Up to receive special offers via txt message" or "Circle K: Reply 'YES' to get offers via txt", (3) where the person's residential telephone number had been registered with the National Do Not Call Registry for at least thirty days before Circle K Stores, Inc. delivered or directed to be delivered at least two of the text messages within the 12-month period, (4) from June 6, 2020 through the date of class certification.

46. Plaintiff is a member of and will fairly and adequately represent and protect the interests of the Class and Subclass as she has no interests that conflict with any of the Class or Subclass members.

47. Excluded from the Class and Subclass are undersigned counsel, Circle K, and any entities in which Circle K have a controlling interest, Circle K's agents and

employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

48. Plaintiff and all members of the Class and Subclass have been harmed by the acts of Circle K, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

49. Members of the Class and Subclass as defined above, are identifiable through Circle K's records, other phone records, and phone number databases.

50. Plaintiff does not know the exact number of members in the Class and Subclass, but Plaintiff reasonably believes that Circle K sent millions of text messages during the proposed class period and that Class members number, at minimum, in the thousands and Subclass members number, at minimum, in the hundreds.

51. Indeed, Circle K has thousands of stores in the United States,[2] many of which, upon information and belief, participate in its Text Messaging Program.

52. Moreover, Circle K has been sued at least twice previously in this District alone for allegedly sending unwanted telemarketing text messages to other consumers. *See Webb v. Circle K. Stores Incorporated*, No. 2:2022cv00716 (D. Ariz. 2022); *Tomaszewski, et al. v. Circle K Stores, Inc.*, No. 2:20-CV-01569 (D. Ariz. 2020).

53. The joinder of all Class and Subclass members is impracticable due to the size and relatively modest value of each individual claim.

54. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

55. There are well defined, nearly identical, questions of law and fact

---

[2] *See* https://www.circlek.com/list-united-states-stores (last accessed August 27, 2024).

affecting all parties.

56. The questions of law and fact, referred to above, involving the class claims predominate over questions that may affect individual Class and Subclass members.

57. There are numerous questions of law and fact common to Plaintiff and to the proposed Class and Subclass, including, but not limited to, the following:

    a. Whether Circle K sent text messages, or directed text messages to be sent, to Plaintiff and members of the Class when those persons had not provided their phone numbers to the Circle K;

    b. Whether the text messages that Circle K directed Mobivity to send to Plaintiff and members of the Class and Subclass were "telephone solicitations"; and

    c. Whether Circle K's conduct constitutes a violation of the TCPA.

58. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and Subclass and have the financial resources to do so.

59. Common questions of law and fact predominate over questions affecting only individual Class and Subclass members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of Class and Subclass members, which will be ascertainable from records maintained by Circle K and/or its agents.

60. The likelihood that individual members of the Class and Subclass will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

61. Plaintiff is not aware of any currently active litigation concerning this controversy already commenced by others who meet the criteria for class membership

described above.

# FIRST CAUSE OF ACTION

**Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c) on behalf of Plaintiff and the Class and Subclass)**

62. Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-61.

63. Circle K violated 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c) by sending telemarketing text messages to Plaintiff's residential telephone number, and to the residential telephone numbers of the members of the Class and SubClass, without consent, and despite their telephone numbers being on the National Do Not Call Registry.

64. As a result of Circle K's violations, Plaintiff and members of the Class and Subclass are entitled to damages in an amount to be proven at trial.

65. Plaintiff and the members of the Class and Subclass are also entitled to and do seek injunctive relief prohibiting Circle K from sending telemarketing text messages to telephone numbers registered on the National Do Not Call Registry, without consent, except for emergency purposes, in the future.

# SECOND CAUSE OF ACTION
**[IN THE ALTERNATIVE TO PLAINTIFF'S FIRST CAUSE OF ACTION]**

**Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c) on behalf of Plaintiff and the Class and Subclass against Circle K for Mobivity's Conduct)**

66. Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-61.

67. Circle K is vicariously liable under 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c) for directing, approving, or ratifying Mobivity's sending of telemarketing text messages to Plaintiff's residential telephone number, and to the residential

telephone numbers of the members of the Class and Subclass, without consent, and despite their numbers being on the National Do Not Call Registry.

68. Given the content of the text messages directed to Plaintiff's telephone number on behalf of Circle K, Mobivity acted with Circle K's actual or apparent authority in sending the subject text messages to Plaintiff's telephone number and to the telephone numbers of the members of the Class and Subclass.

69. Alternatively, given the content of Mobivity's text messages directed to Plaintiff's telephone number on behalf of Circle K, Circle K ratified Mobivity's subject telephone calls to Plaintiff's telephone number and to the telephone numbers of the members of the Class and Subclass.

70. As a result of Circle K's violations, Plaintiff and members of the Class and Subclass are entitled to damages in an amount to be proven at trial.

71. Plaintiff and the members of the Class and Subclass are also entitled to and do seek injunctive relief prohibiting Circle K from causing to be sent telemarketing text messages to telephone numbers registered on the National Do Not Call Registry, without consent, except for emergency purposes, in the future.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class and Subclass, prays for the following relief:

A. Injunctive relief prohibiting Circle K from sending, or directing Mobivity to send, text messages advertising Circle K's goods or services, except for emergency purposes, to any residential telephone number on the National Do Not Call Registry in the future;

B. That the Court enter a judgment awarding Plaintiff and all Class and Subclass members statutory damages of $500 for each violation of the TCPA; and

C. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing a Class the Court deems appropriate,

finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

D. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims of the complaint so triable.

Dated: November 13, 2024                   Respectfully Submitted,

*/s/ James L. Davidson*
James L. Davidson (*pro hac vice*)
Greenwald Davidson Radbil PLLC

Nathan Brown
(State Bar No. 033482)
Brown Patent Law
15100 N 78th Way, Suite 203
Scottsdale, AZ 85260
Phone: 602-529-3474
nathan.brown@brownpatentlaw.com

Anthony Paronich (*pro hac vice*)
anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (508) 221-1510

13