James L. Davidson (*pro hac vice*)
Greenwald Davidson Radbil PLLC
5550 Glades Road, Suite 500
Boca Raton, FL 33431
Tel. (561) 826-5477
jdavidson@gdrlawfirm.com

*Counsel for Plaintiff and the proposed class and subclass with others listed below*

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Monica Abboud, individually and on behalf of a class of persons and entities similarly situated,<br><br>        Plaintiff,<br><br>vs.<br><br>Circle K Stores Inc.,<br><br>        Defendant. | Case No. 2:23-cv-01683-DWL<br><br>**PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF HER MOTION FOR CLASS CERTIFICATION** |

1

1  "An established business relationship" under 47 U.S.C. § 227(a)(4)[1] requires more than just a purchase or sale. It requires the provision of a telephone number to the business by the consumer such that the consumer has a reasonable expectation of receiving solicitation calls. The contrary interpretation Circle K advocates would give businesses *carte blanche* to deliver solicitation communications to the phones of unwitting persons who have simply made a purchase at their local supermarket, gas station, or hardware store—despite that those persons put their phone numbers on the Do-Not-Call Registry and never provided their phone numbers to the businesses. That would be contrary to the TCPA's stated purpose of protecting the personal privacy of residential telephone subscribers by preventing unwanted telemarketing calls.

## I.   An EBR requires a willing transfer of information.

Begin with the language the FCC used to define an EBR: An EBR requires (1) "a prior or existing relationship," (2) "formed by a voluntary two-way communication between a[n] … entity and a residential subscriber" (3) "with or without consideration" (4) "on the basis of the subscriber's purchase or transaction with the entity[.]" 47 CFR 64.1200(5). The "voluntary two-way communication" must occur within the eighteen months preceding the call. *Id*.

So from the start Circle K's argument fails. A purchase alone—such as a consumer buying a soda in a Circle K store—would not satisfy the definition of an EBR because a finding that it did would make superfluous the phrase "voluntary two-way communication." *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so

---

[1]  The TCPA itself does not define established business relationship ("EBR"), but the FCC has done so. *See* 47 CFR 64.1200(5). The TCPA delegated to the FCC the authority to "prescribe regulations to implement [its] requirements." 47 U.S.C. § 227(b)(2). "[W]hen a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the delegation, while ensuring that the agency acts within it." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024).

2

construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.").[2]

Instead, this Court must ascribe meaning to the FCC's use of the phrase "voluntary two-way communication." "Voluntary" means "proceeding from the will or from one's own choice or consent." *See* https://www.merriam-webster.com/dictionary/voluntary (last accessed Sept. 18, 2025). "Communication" means "a process by which information is exchanged between individuals through a common system of symbols, signs, or behavior." *See* https://www.merriam-webster.com/dictionary/communication (last accessed Sept. 18, 2025). "Two-way" means "involving or allowing an exchange between two individuals or groups." *See* https://www.merriam-webster.com/dictionary/two-way (last accessed Sept. 18, 2025).

Taken together, the phrase "voluntary two-way communication" suggests a willing exchange of information amongst parties. Adding back in the rest of the definition of EBR leads to the conclusion that the prior or existing relationship to which the FCC referred can only be formed *by a willing transfer of information* between an entity and a residential subscriber on the basis of the subscriber's purchase or transaction with the entity.

Many courts who have found an EBR to exist "do not discuss the need for a separate two-way communication." *Smith v. Truman Road Dev.*, No. 18-670, 2020 WL 2044730, at *9 (W.D. Mo. Apr. 28, 2020) (collecting cases). For this reason, this Court should depart from the analysis in those opinions.[3]

---

[2] The canons of construction apply equally to any legal text and not merely to statutes. *See Hart v. McLucas*, 535 F.2d 516, 519 (9th Cir. 1976) ("[C]onstructions which render regulatory provisions superfluous are to be avoided.").

[3] In almost all of those opinions, the consumer voluntarily provided to the business—or was at least credibly alleged to have voluntarily provided—his or her phone number as part of the purchase or transaction. *Id.* at *8 ("Smith provided his contact information on a sign-in sheet[.]"); *Elkins v. Medco Health Sols., Inc.*, No. 4:12CV2141 TIA, 2014 WL 1663406, at *3 (E.D. Mo. Apr. 25, 2014) (the plaintiff provided her phone number on an enrollment form); *see also Hovila v. Tween Brands, Inc.*, No. C09-0491RSL, 2010 WL 1433417, at *5 (W.D. Wash.

**II.    The "voluntary two-way communication" language in the EBR defense contemplates the provision of a phone number.**

Absent the provision of a phone number, a business would generally be unable to call a person without undertaking further efforts to locate a phone number for that person. Thus, the definition of EBR contemplates that the willing transfer of information from a residential telephone subscriber to a business will include the provision of his or her phone number.

The alternative is that in crafting the EBR defense the FCC presupposed that the business would already have the residential subscriber's contact information. *See, e.g.*, 68 Fed. Reg. 44144, ¶ 20 (2003) ("We believe the ability of sellers to contact existing customers is an important aspect of their business plan and often provides consumers with valuable information regarding products or services that they may have purchased from the company. For example, magazines and newspapers may want to contact customers whose subscriptions have or soon will expire and offer new subscriptions."). But if that were the case, then the defense should not apply in situations like here where Circle K did not obtain Ms. Abboud's phone number from her, but rather from a different person and at a store from which Ms. Abboud did not make any purchase.

That the EBR defense contemplates the voluntary provision of a phone number is supported by the policy behind the TCPA. The TCPA's legislative history made clear that an EBR "must be grounded in the consumer's expectation of receiving the call." H.R. Rep. 102-317, at 15 (1991). This is because "[t]he TCPA was enacted in response to an increasing number of consumer complaints arising from the increased number of telemarketing calls." *Satterfield v. Simon & Schuster*, 569 F.3d 946, 954 (9th Cir. 2009). And the TCPA's legislative history concluded that the statute "will result in a significant benefit in protecting the personal privacy of residential telephone subscribers," a

---

Apr. 7, 2010) ("It is undisputed that plaintiff purchased items from defendant's retail stores on more than one occasion. Plaintiff does not recall giving defendant his telephone number, but affirms that if he had given a telephone number to a retailer, the number called by defendant is the number he would have given.").

4

substantial portion of whom believed telemarketing calls were "a nuisance and an invasion of one's privacy rights in the home." S.Rep. No. 102–178, at 1 (1991); *see also* 20 F.C.C. Rcd. 3788, 3793 (2005) ("The do not call rules directly advance the government's substantial interests in guarding against fraudulent and abusive solicitations and facilitating the protection of consumer privacy in the home even when the product sought to be sold is a newspaper.").

Interpreting "voluntary two-way communication" to require the provision of a phone number makes senses given these goals. And this conclusion is buttressed by FCC commentary on the EBR. *See* In Re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 7 F.C.C.R. 8752, 8772 n. 67 (Oct. 16, 1992) (noting that a consumer "inquiry" cannot be considered to create an EBR "where the consumer's number has been captured *absent that consumer's express invitation or permission to be contacted at the captured number.*") (emphasis added).[4]

### III.    Circle K's reading of the EBR defense would lead to absurd results.

Plaintiff reiterates that regardless of how this Court interprets the language in the definition of an EBR, she does not believe Circle K has met its burden to establish that individual issues will predominate among the Subclass. *See Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 398 (M.D.N.C. 2015) ("Here, Dish has again provided no evidence to support its assertion that there are thousands of customers on the class list as to whom it would be entitled to an EBR defense; indeed, it has identified only 16 such persons."); *accord True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 931 (9th Cir. 2018) ("Since McKesson bears the burden, we assess predominance by analyzing the consent defenses McKesson has actually advanced and for which it has

---

[4]    Stated another way, a consumer inquiry does not lead to an EBR where the consumer does not voluntarily provide his or her phone number unless the consumer gives express invitation to be contacted at the number. The prior express invitation defense requires a "signed, written agreement," not simply the provision of a phone number. *Gulden v. Dickey's Barbeque Restaurants, Inc.*, No. CV-16-00387-PHX-SPL, 2018 WL 6181659, at *2 (D. Ariz. July 9, 2018) (Logan, J.). So the EBR defense contemplating the provision of a phone number would not, therefore, cause any overlap with the prior express invitation defense.

5

presented evidence."); *see also* 68 Fed. Reg. 44144, ¶113 (2003) (a seller or telemarketer using the EBR defense "must be able to demonstrate, with clear and convincing evidence, that they have an EBR with the called party.").

Setting that aside, interpreting the EBR defense so broadly as to encompass every single commercial transaction regardless of whether the provision of a phone number occurs would be antithetical to the consumer protection purposes behind the TCPA. *See*, supra, II. Starting with the facts here, Circle K is now claiming that it has an EBR defense to TCPA claims of persons who, by definition, *did not provide their phone numbers* to Circle K, who Circle K *was not intending to reach when it sent its solicitation text messages*, and who *registered their names to the national Do-Not-Call Registry specifically so they would not receive unwanted telephone solicitations*.[5] Circle K makes that claim simply because some members of the Sublcass may have *unrelatedly* made a purchase at a different Circle K store. Given these facts, subclass members would have no expectation that Circle K might send marketing text messages to phone numbers that they never provided to Circle K, regarding products (*i.e.*, tobacco) they did not purchase. And that has borne out given the number of persons that responded "wrong number" to Circle K's text messages. *See* ECF No. 69 at 11:3-8.

Similarly, every transaction—whether involving cash, a credit card, or otherwise—at a grocery store, nail salon, restaurant, movie theater, and drugstore would present an opportunity for a business to send telephone solicitations to an unwitting consumer by obtaining the consumer's phone number *from a third-party source*. The TCPA's consumer protection goals are not furthered by such an interpretation of the EBR defense, which would threaten to overwhelm the law itself.

---

[5] Underscoring the commonsense requirement that a consumer provide his or her phone number, Circle K's contrary contention now appears at odds with the position it took earlier in this litigation. *See* ECF No. 38 at 2:22-23 ("Plaintiff's phone number was entered during a transaction (thus establishing a business relationship)[.]").

| | | |
|---|---|---|
| 1 | Dated: September 22, 2025 | Respectfully Submitted, |
| 2 | | |
| 3 | | /s/ *James L. Davidson*<br>James L. Davidson (*pro hac vice*) |
| 4 | | Greenwald Davidson Radbil PLLC |
| 5 | | Nathan Brown (State Bar No. 033482) |
| 6 | | Brown Patent Law<br>15100 N 78th Way, Suite 203 |
| 7 | | Scottsdale, AZ 85260<br>Phone: 602-529-3474 |
| 8 | | Nathan.Brown@BrownPatentLaw.com |
| 9 | | |
| 10 | | Anthony Paronich (*pro hac vice*)<br>anthony@paronichlaw.com |
| 11 | | PARONICH LAW, P.C.<br>350 Lincoln Street, Suite 2400 |
| 12 | | Hingham, MA 02043 |
| 13 | | Telephone: (508) 221-1510 |

7