**GREENBERG TRAURIG, LLP**

Tyler R. Andrews (SBN 250686) *Pro Hac Vice*
andrewst@gtlaw.com
18565 Jamboree Road, Suite 500
Irvine, CA 92612-4410
Telephone: (949) 732-6500
Facsimile: (949) 732-6501

Matthew P. Hoxsie (SBN 034952)
hoxsiem@gtlaw.com
2375 East Camelback Road, Suite 800
Phoenix, AZ 85016
Telephone: (602) 445-8000
Facsimile: (602) 445-8100

Attorneys for Defendant
CIRCLE K STORES INC.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Monica Abboud, individually and on behalf of a class of persons and entities similarly situated,<br><br>          Plaintiffs,<br><br>v.<br><br>Circle K Stores Inc.,<br><br>          Defendant. | Case No. 2:23-cv-01683-DWL<br><br>[Assigned to Hon. Dominic W. Lanza]<br><br>**DEFENDANT CIRCLE K'S SUPPLEMENTAL BRIEF PURSUANT TO THE COURT'S SEPTEMBER 17, 2025 MINUTE ENTRY (ECF NO. 95)** |

Circle K Stores, Inc. ("Circle K") submits this supplemental briefing pursuant to the Court's September 17, 2025 minute entry.  (ECF No. 95.)

## I.    Introduction

As discussed in Circle K's Opposition (ECF No. 78) and during oral argument, the issues of both consent and established business relationship ("EBR") are critical elements of each potential class members' claim, and are each inherently individualized, rendering certification of the subclass improper under Rule 23(b)(3).  As the Court correctly held in its Tentative Ruling, "Plaintiff has not identified a body of evidence that will allow the Court to resolve [Circle K's affirmative EBR defense] 'in one stroke.'"  (ECF No. 92 at 17.)  The Court's correct holding here applies with equal force to both the class and the subclass.  Not only has Plaintiff failed to present any evidence to challenge the EBR issue, she has not disputed that this individualized issue would clearly predominate over *any* conceivable class-wide question.  Nor has Plaintiff disputed that proceeding on a class-wide basis would necessarily devolve into hundreds of individual inquiries and mini-trials on the consent and EBR issues for all class members – including Plaintiff herself.

This supplemental briefing conclusively demonstrates that (1) contrary to Plaintiff's position during argument, the FCC's long-standing EBR regulation requires (and all subsequent caselaw confirms) that even a single commercial transaction with Circle K will extinguish any possible liability on each class member's potential TCPA claim, (2) given the 6,669 stores in the U.S., $41.597 billion in revenue across U.S. stores, and over 9 million customers served by Circle K's parent company *each day* (across 17,000 world-wide stores), it is highly likely, if not indisputable, that a vast majority of the proposed subclass would have their claims mooted by the EBR defense, and (3) Plaintiff cannot serve as a typical or adequate representative for the subclass, both because her claim is highly likely to have been manufactured, and because her own credit card information confirms multiple transactions at Circle K in both Texas and Arizona.

## II.    Establishing an "EBR" Requires Nothing More Than a Single Transaction

The Court's exact question here—whether an EBR can be established by a single transaction or requires something more—was expressly decided in the case of *Hand v. Beach Entertainment KC, LLC*, 456 F. Supp. 3d 1099 (W.D. Mo. 2020).  There – just like Plaintiff here

– the plaintiff argued that "in addition to evidence of Hand's purchase, Defendants must also point to evidence of a 'two-way communication' to demonstrate an EBR was formed." *Id.* at 1122. The defendant, just like Circle K here, argued that "evidence of a recipient's purchase is sufficient, and that 'the regulation specifically contemplates that this [two-way] communication occurs on the 'basis' of Plaintiff's purchase at [defendant's store].'" *Id.*

In resolving the dispute, the court confirmed *defendant's* position, holding that "[t]he legislative history indicates that Congress intended the [EBR] to be interpreted broadly and contemplated that it could be formed through a single purchase." *Id.* (quoting H. Rep. No. 102-317, at 14-15 (1991) ("[A]n 'established business relationship' [] could be based upon any prior transaction, negotiation, or inquiry between the called part and the business entity").

In so ruling, the court relied on the FCC's own broad interpretation. *See In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14082-83, n.382 (2003) ("[I]f a consumer purchases a seller's products at a retail store or from an independent dealer, such purchase would establish a business relationship with the seller, entitling the seller to call that consumer under the EBR exemption."); ("[T]he EBR should not be limited by product or service. In today's market, many companies offer a wide variety of services and products. Restricting the EBR by product or service could interfere with companies' abilities to market them efficiently").

The FCC's 2003 order relied upon by *Hand* was issued in response to concerns about the receipt of unwanted messages. At the time, the EBR definition <u>excluded</u> a time limitation:

> A prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of an inquiry, application, purchase or transaction by the residential subscriber regarding products or services offered by such person or entity, which relationship has not been previously terminated by either party.

A few consumers advocated eliminating the exemption for prerecorded messages, "[o]ne commenter stated that because a consumer might have established a relationship with a company does not necessarily mean that he or she wishes to receive telemarketing calls from that company," and others advocated setting a time duration as a balance. *See* 18 F.C.C. Rcd. at 14076-77.

In response, the FCC amended the definition of EBR <u>only</u> to include a time duration and to read, as it does now:

> A prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity within the eighteen (18) months immediately preceding the date of the telephone call or on the basis of the subscriber's inquiry or application regarding products or services offered by the entity within the three (3) months immediately preceding the date of the call, which relationship has not been previously terminated by either party.

*See id.* at 14079; *see also* 47 C.F.R. § 64.1200(f)(5).

Importantly, the FCC expressly rejected removing the EBR exemption and similarly refused to amend the definition to require anything more than *a single purchase or transaction*. As the FCC noted in response to the consumer's concern stated above, to the extent individuals were concerned about getting unwanted messages from companies they shopped at, <u>their solution is to request to be added to the company's internal do not call list</u>.  *See* 18 F.C.C. Rcd. at 14082 ("As long as the company identifies itself adequately, a consumer should not be surprised to receive a telemarketing call from that company, regardless of the product being offered.  If the consumer does not want any further calls from that company, he or she may request placement on its do-not-call list."); *see also* 47 C.F.R. § 64.1200(f)(5)(i) ("The subscriber's seller-specific do-not-call request . . . terminates an [EBR] for purposes of telemarketing and telephone solicitation even if the subscriber continues to do business with the seller.").  Accordingly, persons who get messages from companies with whom they have an EBR are not left without recourse, as they can simply respond "STOP" or otherwise request to be added to a company's internal do-not-call list.

In addition to the plain language of the regulation, the *Hand* court relied on several other cases confirming that an EBR could be established by a single transaction:

- *Krauker v. Dish Network L.L.C.*, 311 F.R.D. 384, 387-88 (M.D.N.C. 2015) (An EBR "is created after an individual makes a purchase, inquiry, or application for products or services and lasts for a certain number of months.").

- *Elkin*, No. 4:12CV2141 TIA, 2014 WL 1663406, at *8 (E.D. Mo. Apr. 25, 2014) (EBR existed where plaintiff used defendant's prescription benefit management services to fill prescriptions at defendant's pharmacies).

- *Zelma v. Art Conway*, No. 2:12-CV-00256 DMC, 2013 WL 6498548, at *2 (D.N.J. Dec. 11, 2013) ("Plaintiff's election to receive a free Prevention Magazine subscription through the SkyMiles program is a sufficient 'transaction' to trigger the [EBR] exception[.]").

- *Cubbage v. Talbots, Inc.*, No. C09-911BHS, 2010 WL 2710628, at *3 (W.D. Wash. Jul. 7, 2010) ("In this case, Mitchell purchased at least one product at a Talbots store within the eighteen months prior to April of 2009, the date of the call.  Therefore, Mitchell and Talbots had an established business relationship.").

- *Hovila v. Tween Brands, Inc.*, No. C09-0491RSL, 2010 WL 1433417, at *5 (W.D. Wash. Apr. 7, 2010) (calls after plaintiff purchased merchandise fell within EBR exception).

The *Hand* court even noted that "***Hand has cited no authority to support his position that more is required [for an EBR]*.*"  456 F. Supp. 3d at 1123 (emphasis added).  And in reviewing citing references to the *Hand* case, as well as the cases relied upon by *Hand*, Circle K has found no contradicting regulations or caselaw undermining the *Hand* holding.   Indeed, Circle K has found additional caselaw in support.  *See Davies v. W.W. Grainger, Inc.*, No. 13-cv-03546, 2016 WL 6833902, at *3 (N.D. Ill. Nov. 21, 2016) (stating an EBR can be based on "one purchase" and that, where the "evidence shows that over the course of 14 years, Grainger fulfilled nine orders that are attributable to Davies," there could no dispute that "an EBR exists").

During argument, Plaintiff suggested that an individual must *give* the company their phone number before an EBR could be formed.  This is incorrect.  Provision of a number relates only to consent—not established business relationship—and adopting a rule that EBR requires providing one's number is not only contrary to the decisions of the courts noted above but it would in effect cause the EBR to duplicate the FCC's separate *consent* defense, which can be satisfied by provision of a phone number, regardless of purchase history.  *See, e.g.*, *Van Patten v. Vertical Fitness Group, LLC*, 22 F. Supp. 3d 1069, 1073 (S.D. Cal. 2014) (persons who knowingly release their numbers "have in effect given their invitation . . . to be called at the number . . . given").

### III.    Plaintiff's Purchase Records Confirm She Established an EBR and Circle K's Publicly Available Records Demonstrate the Broad Reach of Its Stores

Not only would the individualized EBR defense predominate over any potential class-wide questions, but it also dooms Plaintiff's own TCPA claim against Circle K.  Indeed, Plaintiff's purchase records demonstrate that she regularly shopped at Circle K within the eighteen (18) months preceding the first message on August 2, 2023, which prevents her from pursuing her claim or from serving as an adequate class representative.  *See* **Exhibit 1** (showing purchases in: Spring, Texas; League City, Texas; Tucson, Arizona; and Katy, Texas).

Circle K has 6,669 stores nationally, and 761 stores in Texas alone.  *See* https://www.circlek.com/list-united-states-stores; *see also Wells Fargo Bank v. Wrights Mill Holdings*, 127 F. Supp. 3d 156, 157 (S.D.N.Y. 2015) (judicial notice of information on party's website as long as the website's authenticity is not in dispute and it is capable of accurate and ready determination); *Vesta Corp. v. Amdocs Mgmt. Ltd.*, 129 F. Supp. 3d 1012, 1020-21 (D. Or. 2015) (judicial notice of SEC filings, press releases, or contents of a public website).

While Circle K's financials are published within its parent company's reporting, Alimentation Couche-Tard Inc., which includes other trademarks like Holiday, the 6,669 Circle K stores make up the majority of Alimentation Couche-Tard's 7,115 stores in the United States and account for more than one-third of all stores world-wide.  *See* Alimentation Couche-Tard, 2025 Annual Information Form at 15.[1]  Total revenue for all 7,115 stores in the most recent Annual Information Form equaled approximately $41.597 billion.  *Id.*  And Alimentation Couche-Tard serves "over 9 million customers daily" across its 17,000 stores world-wide.  *See* Sustainability Report 2025 at 3.  That is more than 3 million customers at U.S. stores *per day*.

Given the breadth of Circle K's U.S. operations, it is inconceivable that <u>all persons</u> in the proposed subclass <u>never</u> shopped at Circle K at any time in the preceding 18 months, nor – as the Court's Tentative Ruling correctly found – has Plaintiff produced any "body of evidence" to the contrary.

---

[1] The 2025 Annual Information Form and Sustainability Report 2025 are both available for download at https://corporate.couche-tard.com/financial-reporting?cat=29.  They are also attached hereto for ease of reference as **Exhibits 2** and **3**.

RESPECTFULLY SUBMITTED this 22nd day of September 2025.

GREENBERG TRAURIG, LLP


By  /s/ Matthew P. Hoxsie
    Tyler R. Andrews (*Pro Hac Vice*)
    Matthew P. Hoxsie
    Attorneys for Defendant, CIRCLE K STORES
    INC.

CIRCLE K'S SUPPLEMENTAL BRIEF

**CERTIFICATE OF SERVICE**

☒

I hereby certify that on September 22, 2025, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Nathan Brown
BROWN PATENT LAW
15100 N 78th Way, Suite 203
Scottsdale, AZ 85260
Nathan.Brown@BrownPatentLaw.com

James L. Davidson (*pro hac vice*)
GREENWALD DAVIDSON RADBIL PLLC
5550 Glades Road, Suite 500
Boca Raton, FL 33431
jdavidson@gdrlawfirm.com

Anthony Paronich (*pro hac vice*)
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
anthony@paronichlaw.com

*Attorneys for Plaintiff*

By: */s/ Tammy Mowen*